**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

In re:

    JEFFREY S. DAVIDSON,                       Chapter 7
                                                          Case No. 23-11130
                    Debtor.

---

### REPLY IN OPPOSITION TO AMENDED MOTION FOR 2004 EXAMINATION

Debtor JEFFREY S. DAVIDSON, by his attorneys Fairbanks Fletcher Law PLLC, Elizabeth Fairbanks-Fletcher, Esq., of counsel, states the following in opposition to Creditor's Amended Motion for a 2004 Examination:

### BACKGROUND

1. On or about April 26, 2022, Debtor signed a Promissory Note for an unsecured personal loan with John B. Carnett, IV (hereinafter "Creditor") for $21,000.00 at 16% interest, due in 90 days from signing (**Exhibit "A"**). Post-default, the interest would increase to 24% (**Exhibit "A"**).

2. At the time of the loan, Debtor was self-employed as Jeff Davidson Stone, LLC as a stone mason. After loan inception, the Debtor unexpectedly lost his newest and largest client, who would have been the source for repayment of the loan. At about the same time, Debtor became sick and unable to work. As a result of these two unplanned events, his business failed. Debtor then took a job with the Town of Castleton as a highway foreman.

3. During Debtor's struggles, Debtor told Creditor, who at the time was Debtor's friend, about his bad financial downturn, including the loss of his biggest client, Debtor's illness, and Debtor's eventual business failure. Nevertheless, Creditor continually pressured Debtor, and his family members, for repayment. Despite his financial stresses, Debtor was able to make five payments to Creditor: $5,000.00 on August 11, 2022; $1,000.00 on May 4, 2023; $2,250.00 on May 15, 2023; $2,250.00 on June 3, 2023; and $2,250.00 on June 16, 2023, for a total of $12,750.00 (**Exhibit "B"**).

4. Unable to continue to make ends meet, Debtor filed Chapter 7 bankruptcy on November 3, 2023, listing Creditor and this personal loan (**D.N. 1**). The Court then served upon Creditor notice of the filing and the imposition of the stay on November 8, 2023 (**D.N. 7**).

5. On November 13, 2023, Creditor courtesy copied Debtor on an email Creditor sent to Debtor's 19-year-old daughter, referencing Debtor's bankruptcy filing (**Exhibit "C"**). In that email, cc'd to Debtor, Creditor stated he planned to "file an Adversary Proceeding Complaint with the Bankruptcy Court… that the costs associated with all our efforts to collect the monies that Jeffrey owes will continue to accumulate… (w)e look forward to the Summons being delivered by a process server… (w)e look forward to relief from the Court." (**Exhibit "C"**).

6. Also on November 13, 2023, Creditor sent a text directly to the Debtor, stating:
   "YOU the debtor will now get to defend yourself with a full on adversary proceeding up through trial -This will result in very substantial legal fees as the time involved will easily be twenty hours or more- I can't wait to meet with my legal team and file our Adversary Claim this week against you- I mean if you think a State Supreme Court Case and a Adversary Claim at the same time is not exciting? Let's Go Have Some Fun… Game On Kids…" (**Exhibit "D"**).

7. Additionally, Creditor also sent a text to Debtor's mother:
   "I'm sure like every other time you are going to pay his lawyers and while you might think this C7 is just gonna go away- - We are going to file an Adversary Complaint against Jeffrey and his Chapter 7 due to significant issues related to how Jeffery dispersed monies, the timing of these distributions, the parties paid and the date he originally defaulted on our note- We are going to seek claw backs- We are going to investigate any potential fraud, etc… This will result in substantial additional legal fees – I'm super excited to get back in Federal Court with my team…" (**Exhibit "E"**).

8. On November 14, 2023, despite Creditor's admitted knowledge of the bankruptcy filing, Creditor had Debtor served with a state court lawsuit for $12,021.49, the amount allegedly due on the unsecured loan (**Exhibit "F"**)

9. The sole cause of action Creditor alleged in his state court Complaint was for breach of contract (**Exhibit "B"**). Creditor did not plead fraud or other malfeasance in that state court Complaint, filed on October 31, 2023, before the commencement of the bankruptcy case (**Exhibit "B"**). Instead, the *only* time Creditor proffered any allegations of fraud was

*after* the Debtor filed for bankruptcy protection and the debt slated for discharge (**Exhibits "B," "C," "D," "E"**).

10. On December 4, 2023, Debtor filed an Adversary Proceeding in this Court to determine the dischargeability of Creditor's debt (**D.N. 10**). That Adversary Proceeding has since been dismissed.

11. On December 7, 2023, Creditor filed his first Motion for 2004 Examination. The request seeks all banking information, contracts, invoices, communications, payments, credit card statements, insurance contracts, accounting ledgers and transactions from March 1, 2022 to November 3, 2023.

12. On February 14, 2024, Creditor filed his Amended Motion for 2004 Examination. The amended request seeks "to review the Debtor's acts, conduct, income, liabilities, payments to suppliers, payments to creditors and financial condition during the time period- April 26, 2022 to OCTOBER 31, 2023" (**D.N. 29, ¶25**).

## CREDITOR STILL HAS NOT MET HIS BURDEN FOR A 2004 EXAMINATION

13. The scope of a Rule 2004 examination "may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge..." Fed. R. Bankr. P. 2004.

14. Although not specifically required by the text of Bankruptcy Rule 2004, there should be sufficient "cause" for Rule 2004 examination. *Id.; In re Sheetz*, 452 B.R. 746, 749 (Bankr. N.D. Ind. 2011). The party seeking to conduct a 2004 examination bears the burden of proof in showing good cause for the examination which it seeks. Fed. R. Bankr. P. 2004; *In re DeWitt*, 608 B.R. 794, 798 (Bankr. W.D. Pa. 2019). "Good cause *ordinarily* may be shown if the examination and requested documents are necessary to establish the claim of the party seeking the examination or the document production, or that denial of such request would cause it undue hardship or injustice." *Boeing Airplane Co. v. Coggeshall*, F. 2d 654, 659 (D.C. Cir. 1960).

15. Despite being broad in scope, a 2004 examination has limits. In example, 2004 examinations "cannot stray into matters which are not relevant to the basic inquiry" [*In re Mittco, Inc.*, 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984)]; probe matters not having effect on

the administration of the estate [*In re Table Talk, Inc.* 51 B.R. 143, 145 (Bankr. D. Mass. 1985) citing *Mittco*, 44 B.R. at 36]; or be used to abuse or harass the target" (*Id.*)

16. In deciding whether to order a Rule 2004 examination, courts weigh whether there is some reasonable basis to examine the material sought, in other words, whether denial of production would cause undue hardship or injustice to movant. Fed. R. Bankr. P. 2004; *In re Kleynerman,* 617 B.R. 122 (Bankr. E.D. Wis. 2020).

17. Here, Creditor fails to show good cause for a 2004 examination. Creditor's burden is not satisfied because the information requested may simply be relevant. Creditor has not shown how the examination may lead to the discovery of assets, establish his claim, protect legitimate interests, or avert undue hardship or injustice. In this Amended Motion, Creditor seeks extensive information to determine where the loan proceeds over a 17-month period (down from his original 18-month request) were disbursed, but the loan contract drafted by Creditor (or his counsel) carved out no restrictions on the use of the funds. Instead, this was an unsecured personal loan obtained more than a year-and-a-half before Debtor filed for bankruptcy.

18. Further, Creditor recognized that this was an unsecured personal loan when he filed his state court Complaint that contained the sole allegation of breach of contract for non-payment (**Exhibit "B"**). Creditor now complains that he was acting *pro se,* so that pleading should have no bearing in this Court. However, that is the danger of proceeding without counsel. Creditor should now be estopped from taking any inconsistent position in this Court to support a non-dischargeability claim when Creditor's own state court pleading failed to allege fraud or other malfeasance.

19. Creditor's stated "Timeline" of events in his Amended Motion reads like nearly every other unsecured creditor's experience with a debtor in financial trouble, and this itemization of post-loan communications offers nothing to support non-dischargeability (D.N. 29, ¶¶2-19). In fact, Creditor's timeline *proves* Debtor's claims – that after loan inception, his self-employment business ended abruptly, he had to secure work with an employer, and was scrambling to get his friend paid ["I'll do my best to pay you as fast as possible once I start getting paid from my new job. I will look into getting another home equity loan next week" (D.N. 29 ¶15)]. Instead of alleging misrepresentation at inception, Creditor complains that the "fraud" occurred after the loan was in default: "The Debtor

engaged in a series of communications and conduct for a period over 400 days. The Debtors (sic) conduct included: Implied misrepresentations and actions intended to create or foster false impressions to induce the Movant to continue to believe that the Debtor would fully pay the loan in full" (D.N. 29 ¶23). This is irrelevant to a non-dischargeability claim.

20. In the Amended Motion, Creditor claims Debtor made certain "spoken guaranteed statements" to the Creditor without specificity (D.N. 29 ¶21). Any statements by the Debtor to this Creditor are already in the Creditor's possession. Therefore, Creditor has all he needs to establish his claim, if there is one, and denial of a 2004 Examination will not cause Creditor any "undue hardship or injustice." *Boeing Airplane Co. v. Coggeshall*, F. 2d 654, 659 (D.C. Cir. 1960).

21. Creditor further claims, "At no time in determining whether to grant a loan to the Debtor did the Debtor disclose any litigation, claim, investigation, administration proceeding or similar action against him was pending or threatened" (D.N. 29 ¶21). Creditor does not explain what action to which he is alluding. However, if he is referring to the instant bankruptcy case, this bankruptcy was filed on November 11, 2023 – more than a year-and-a-half _after_ the date of loan inception on April 26, 2022 and was not pending at the time the loan was made.

22. Creditor's Amended Motion shows Debtor's change in his income in the months after the loan was incurred (D.N. 29, ¶¶2-19). It also shows Debtor was trying to get Creditor paid and, in fact, paid him $12,750.00 even after his business died. The fact that Debtor's father promised to send Creditor some money is irrelevant to support Creditor's 2004 Examination request (D.N. 29 ¶16).

23. Creditor seems to believe that Debtor's "fraud" was that he continued to promise to pay him (and, indeed, somehow found the funds to pay him $12,750.00) and those promises to pay resulted in the Creditor delaying filing a lawsuit against Debtor. That is not "fraud" as contemplated by the Bankruptcy Code.

24. Further, Creditor filed a state lawsuit only alleging breach of contract (**Exhibit "B"**), and he should be estopped from claiming otherwise in this court.

25. As such, Creditor's motion papers are insufficient to support an order directing a 2004 Examination on what Creditor admits is a "breach of contract" debt. Therefore, Creditor's request should be denied.

### **CREDITOR'S PURPOSE IS TO CONTINUE TO ABUSE, HARASS, AND ANNOY DEBTOR**

26. Assuming this Court finds Creditor has established good cause sufficient for a Rule 2004 examination, the burden shifts back to the objecting party to show that the examination would be oppressive or burdensome. Fed. R. Bankr. P. 2004; *In re Subpoena Duces Tecum*, 461 B.R. 823, 829 (Bankr. C.D. Cal. 2011).

27. "Rule 2004 examinations may not be used for the purposes of abuse or harassment. *In re Mittco, Inc.* 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984); *In re Martin*, 208 B.R. 807, 810-11 (N.D.N.Y 1997) (denial of Rule 2004 motion for impermissible purpose of abuse and harassment), *aff'd, Martin v. Schaap Moving Sys., Inc.*, 152 F. 3d 919 (2d Circ. 1998) (unpublished disposition). Further, "Rule 2004 examinations may not be used to annoy, embarrass or oppress the party being examined." *In re Coffee Cupboard, Inc.*, 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) (citing *In re Drexel Burnham Lambert Group, Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991); *see also In re Strecker*, 251 B.R. 878, 883 (Bankr. D. Colo. 2000).

28. As in *Strecker*, here, Creditor's messages to Debtor after his bankruptcy filing evidence his intent to cause Debtor to incur "unnecessary and burdensome attorney's fees and other costs" without any legal basis "beyond the mere fact that a debtor has filed bankruptcy…" *In re Strecker*, 251 B.R. 878, 883 (Bankr. D. Colo. 2000). This is evident in his communications with Debtor and his family members, in each of which this Creditor threatens to engage Debtor with costly litigation without legal basis to inflict punishment for Debtor filing bankruptcy (**Exhibits "C," "D," "E"**).

29. As already shown, Creditor has been harassing the Debtor – even after receipt of notice of the bankruptcy filing and imposition of the automatic stay (**Exhibits "C," "D," "E"**). In each post-petition communication, Creditor taunts and alarms the Debtor with the erroneous threat that the state court complaint continues to move forward despite the bankruptcy filing ["I mean if you think a State Supreme Court Case and a Adversary

Claim at the same time is not exciting? Let's Go Have Some Fun… Game On Kids" (**Exhibit "D"**)]. He also threatens to further financially bury Debtor with attorney fees and costs ["YOU the debtor will now get to defend yourself with a full on adversary proceeding up through trial -This will result in very substantial legal fees as the time involved will easily be twenty hours or more" (**Exhibit "D"**) and he's "super excited to get back in Federal Court with my team" (**Exhibit "E"**)]. Despite the threat of his "team," however, Creditor is representing himself *pro se*. So, only this already-bankrupt Debtor will be burdened with additional attorney fees and costs, which, as the Creditor makes clear, is exactly his plan of retribution (**Exhibits "C," "D," "E"**).

30. Further, whereas in the state court Complaint the Creditor alleges "breach of contract," once the bankruptcy case was known to Creditor, he suddenly now insinuates fraud or other malfeasance in his communiqués (**Exhibit "E"**). What is revealed in these missives, however, is Creditor's anger and want of reprisal because Debtor filed for bankruptcy ("I'm tired of being walked all over… 'conveniently' Jeffrey files for Chapter 7 … Read the lawsuit- It might teach you something about how much I worked to help your family and what I got for it") (**Exhibit "C"**).

31. It is curious that this Creditor who claims so fervently in his Amended Motion for a 2004 Examination that culling information from the Debtor is so crucial to his claim of non-dischargeability that despite appearing at the first two §341 meetings, he did not ask any questions or request any documentation. Thereafter, at the final §341 meeting held on February 13, 2024, Creditor failed to appear at all. The meeting was then closed, and Trustee Marc Ehrlich filed his Report of No Distribution to the docket on February 14, 2024.

32. Finally, it is evident from the pleadings and hearings thus far in this matter that if Creditor cannot collect monetarily, then he will collect figuratively, by filing pleadings without legal basis, creating havoc in Debtor's case, increasing Debtor's attorney fees, extending as far as possible Debtor's discharge, and delaying his fresh start. In short, if Creditor isn't going to be paid, Creditor will make Debtor's case as painful as possible in lieu of payment. Creditor's instant motion for a 2004 examination is yet more of the same abuse without any legal purpose. Therefore, Creditor's request for a 2004 examination should be denied.

**WHEREFORE**, Debtor requests Creditor's Amended Motion for a 2004 Examination be denied in its entirety, together with such other and further relief as to the Court seems just and proper.

Dated: February 21, 2024　　　FAIRBANKS FLETCHER LAW PLLC
　　　　Saratoga Springs, NY

BY: Elizabeth Fairbanks-Fletcher, Esq.　513317
178 Elm St., Suite 4, Saratoga Springs, NY 12866